## Ashurst v. Ashurst.

*Bill in Equity to Enforce a Lien on Lands by a Former Decree.*

1. *Register's docket; not a record.*—Notes upon the register's docket kept under Code of 1896, §657, are no part of the record in a cause, but memoranda or bench notes from which the record

[Ashurst v. Ashurst.]

is made up, and cannot be considered on appeal in the absence of a decree or minute entry.

2. *Estoppel in pais.*—Where the owner, or person having an interest in property, represents another as the owner, or permits him to appear as such, or as having complete authority over it, he will be estopped to deny such ownership or authority against persons, who, relying on his representations or silence, have purchased or acquired an interest in the property. And, generally, when a person by word or conduct voluntarily induces another to act on a belief in the existence of a certain state of facts, he will be estopped against him to allege a different state of facts.

3. *Estoppel; case at bar.*—A party who aids another to procure a loan of money upon a mortgage of lands as the property of the latter, by introducing him to an agent to procure the loan, and by pointing out the boundaries and character of the land, and aiding the borrower's agent in tracing the title to the land in the borrower, not disclosing any claim upon the land, in himself, is estopped to set up a title or claim against the mortgagee, who has acted on the representation of the borrower's agent induced by such conduct on the part of the person so estopped.

4. *By what law contract governed.*—A note and mortgage, given upon lands in Alabama to obtain and secure a loan of money to a resident of Alabama, providing that they "shall be governed and construed by and under the laws of Alabama, where the same are made," and which were signed in Alabama, and forwarded to the borrower's agent in New York, who there delivered them to the lender's agent, for approval, whereupon they were forwarded by the borrower's New York agent to the lender in London, who remitted the money to the borrower's New York agent, who there applied part of the money to the satisfaction of a prior mortgage on the same lands, and remitted the balance to the borrower, constitute an Alabama, and not a New York, contract, notwithstanding they are made payable in New York.

APPEAL from Montgomery Chancery Court.

Tried before Hon. JERE N. WILLIAMS.

The appeal is prosecuted from a final decree dismissing complainant's bill. The facts are stated in the opinion.

GUNTER & GUNTER, for appellant.—We quote from Mr. Bigelow, (5th Ed.), p. 570, the five ingredients which must concur to create an estoppel: 1. There must have been a false representation or concealment of

material facts. 2. The representation must have been made with knowledge, actual or virtual, of the facts. 3. The party to whom it was made must have been ignorant, actually and permissibly, of the truth of the matter. 4. It must have been made with the intention, actual or virtual, that the other party should act upon it. 5. The other party must have been induced to act upon it. Applying the fifth maxim, it is evident that acts and conduct unknown to a person can not be the basis of an estoppel in favor of such person.—*Alexander v. Handley,* 96 Ala. 223; *Ala. Fer. Co. v. Reynolds,* 85 Ala. 23; *Marble v. Lypes,* 82 Ala. 322; *Levy v. Alexander,* 95 Ala. 105. The acts and conduct relied on not being known to the lender, nor shown to have been intended for him to act upon, cannot create an estoppel.—Bigelow on Estoppel, (5th Ed.), pp. 570 and 628; *Mayenborg v. Haynes,* 50 N. Y. 675; *Maguire v. Selden,* 103 N. Y. 642; 2 Rice on Evidence, 728; *Ketchum v. Duncan,* 96 U. S. 659; *Rover Iron Co. v. Trout,* 5 Am. St. Rep. 296. The negotiations being concluded in New York, the debt payable there, and the money there paid to the borrower's agent, it was a New York contract.—*Minnesota Linseed Oil Co. v. Collier,* 17 Fed. Cases, 447; *Adams v. Lindsell,* 1 Barn. & Ald. 681; *Falls v. U. S. Savings L. & B. Co.,* 97 Ala. 421, 433 and 4; 3 Encyc. of Law, 856; 1 Parsons on Cont. 481-3; *Cubbege v. Napier,* 62 Ala. 518; *McGarry v. Nicklin,* 110 Ala. 559.

CALDWELL BRADSHAW, and JAS. E. WEBB, *contra.* The New York usury laws are highly penal, and a court of equity in our State will not enforce penalties under the laws of another State.—*Conover v. Van Nater,* 17 N. J. Eq. 401, 407; 1 Jones on Mortgages, 643; 3 Amer. E. E. of Law, 573; *Commonwealth v. Green,* 17 Mass. Rep. 515 to 547; Wharton on Conflict of Laws, 4, 503, 504, 505, 507, and 508; *Amer. Mort. Co. v. Sewall,* 92 Ala. 174. The contract in this case, not made with any intent to evade the usury laws of New York, expressly providing that it is made with reference to the laws of Alabama, where the debtor resides, and signed the papers, the *situs* of the property, and the place of the loan, should be enforced as an Alabama contract in the interest of sound morality and good faith, rather than destroyed by subjecting it to the penal laws of another

State.—*Chapman v. Robinson,* 6 Paige's Ch. Rep. 627; *Hitchcock v. Bank,* 7 Ala. 433; Story's Conflict of Laws, 287; Jones on Mortgages, 643; 1 Dan. on Neg. Inst. 922; *Arnold v. Pollock,* 22 Ia. 194; 1 Ran. Com. Paper, 45; *Scott v. Perlee,* 39 Ohio St. Rep. 63; s. c. 48 Am. Rep. 421; *Kelloy v. Miller,* 2 McCrary Rep. 395; *Newman v. Kershaw,* 10 Wis. 341; *Fisher v. Otis,* 3 Chan. 83; *Hasford v. Nichols,* 1 Paige, 225; *Robinson v. Bland,* 2 Pa. St. Rep. 1078; *Thornton v. Dean,* 19 S. C. 583; s. c. 45 Am. Rep. 796; *Lenzie v. Hill,* 62 Maine Rep. 212; s. c. 22 Am. Rep. 564. In *McGarry v. Nicklin,* 110 Ala., there was no express provision as in this case, that the contract was made with reference to the laws of Alabama. The acts and conduct of complainant created an estoppel against him.—*Guthrie v. Guinn,* 43 Ala. 561; *Chapman v. Hamilton,* 19 Ala. 121; *Sullivan v. Conway,* 81 Ala. 154; Bigelow on Estoppel, 564, 566; *Wendell v. Vann R.,* 1 John. Ch. 344; *Chapman v. Chapman,* 59 Pa. St. Rep. 214.

HARALSON, J.—The bill in this case was filed by the appellant, J. V. Ashurst, against Robert T. Ashurst, Henry C. Semple and The American Freehold Land Mortgage Company of London, Limited, the real defendant in interest being the said Mortgage Company, hereafter referred to as the London Company. The bill was filed in the chancery court of Montgomery, to enforce the collection of a decree in said court, rendered on the 31st May, 1878, in favor of said Henry C. Semple against said Robert T. Ashurst, whereby it was adjudged, that said Semple has a lien on the lands mentioned in this bill, to pay a large debt owing by said Ashurst to said Semple, which lien it is claimed is superior to that of the London Company, under a mortgage given by said Ashurst to it in 1886. The complainant, J. V. Ashurst, claims said Semple decree, by assignment thereof by said Semple, and the contention between the parties is, as to which has the superior lien—the appellant under said decree, or the London Company under its said mortgage.

In respect of the claim of the company, the complainant alleged, "that the rights of said foreign corporation, if any it has, are subordinate to orator's rights; that said corporation had notice of orator's rights in the

premises, at and before the acquisition of its lien on said property, and that the said lien or mortgage in favor of the said foreign corporation was given for and upon a loan of money to the said Robert T. Ashurst, made in the State of New York at a greater rate of interest than six per cent. per annum. The statute of New York, making void all bonds, bills, notes, assurances or securities whatever, whereby a greater rate of interest than six per cent. per annum is charged, was set out in full, and admitted to be correct.

The London Company, denying generally the allegations of the bill, sets up the defense that the loan was procured by said Ashurst with the aid of his son, the complainant, who was active in procuring said loan to be made, and he is, therefore, estopped to deny its validity; that the London Company, when it made the loan, did so without any knowledge of complainant's alleged lien, and when it was induced by complainant to believe that he had no lien; that it is a *bona fide* purchaser for value without notice of complainant's claim or lien on said lands, and denies that said mortgage and notes were New York contracts, and sets up that they were executed in Alabama, and are governed by the laws of that State.

The defense against usury set up in the bill, was interposed in section three of defendant's answer. It is claimed by appellant that this section of the answer was stricken out by an amendment. The only record evidence appearing touching an amendment, is found on page 83 of the transcript, where the minute entry of June 20th, 1892, recites, that a previous submission of the cause was set aside, and defendant, the London Company, was allowed to file an amended answer and take additional testimony; but no amended answer appears in the transcript. Again, on page 108 of the transcript, among the orders of court—copies, as seems, of the entries on the trial docket of the court—appears this entry: "April 11th, 1893. Testimony ordered published. The answer is amended by striking out section 3 of the same, and counsel objects to the allowance of the amendment. Cause submitted." No minute entry of this order, or of any such amendment of the answer, appears in the transcript. Section 657 of the Code of 1896, subd. 2—the same in the Code of 1886—requires the reg-

ister to keep a docket, in which must be entered, among other things, "a note of all orders and proceedings." These notes, however, in the absence of a statute making them such, are no part of the record of the cause, but are memoranda or bench notes from which the record is to be made up.—20 Am. & Eng. Encyc. of Law, 491, and authorities there cited. The evidence is lacking therefore, to show that said section three of the answer was ever stricken out, and it must be treated as still in the record.

It is not disputed that the appellant, as between himself and Robert T. Ashurst, is the owner of the lien and claim of said Semple, and as against him, may enforce the same by a sale of the lands mentioned in the bill as covered by and subject to said lien. Nor is it disputed, that as between the London Company and the said Robert T. Ashurst, said company is entitled to enforce its mortgage on said lands, by a foreclosure thereof, for the satisfaction of the mortgage lien. We may, therefore, pretermit a statement of the title from the same original source to each of the parties, the only question being, as above stated, as to which of the respective liens is superior—that of complainant or the one of said London Company.

It was shown that about the 3d of February, 1882, said Robt. T. Ashurst, the defendant in said Semple decree, and a defendant to this suit, desiring to procure a loan of money upon the security of the lands mentioned in the bill, applied to W. P. Pinkard as his agent, to negotiate for him a loan of $2,250, to be secured by a mortgage on said lands, and that said Pinkard, through his correspondents in the city of New York, obtained said loan from the New England Mortgage Security Company, whose office was in Boston, Massachusetts, at which place the application for the loan was accepted, and afterwards, on the 4th of April, 1882, the said company made said loan to said Robt. T. through his said agent, and received from him a mortgage on said lands duly executed by said Robt. T. and his wife Julia F., and a note payable for the money secured by said mortgage. Said note was payable on the first of April, 1887, at the office of the Corbin Banking Company, New York, and bore interest at 8 per cent. per annum, with annual interest coupons attached. This mortgage was duly

filed for record in probate offices of Tallapoosa and Macon counties, where the lands lay, in the first named county, on 31st March, 1882, and in the latter, on the 4th April, 1882.

It was shown that said Robt. T. Ashurst, in making· application for said loan, stated that the lands to be mortgaged were entirely free from encumbrances, except as shown by the abstract of title; and that he represented in the abstract that the balance due on the decree in the case of *Semple v. R. T. Ashurst* was $200, which he would pay off before making the mortgage. The date of the mortgage was the 23d of March, 1882, and on the margin of the record of the decree in said chancery court in the case of *Henry C. Semple v. Robt. T. Ashurst,* was the following entry: "This decree has been compromised and settled by the defendant with me, and is declared satisfied as to the complainant's demand. Henry C. Semple, March 24th, 1882."

On the 3d February, 1882, said Robert T. Ashurst, in making said application for the loan, made and signed an affidavit in which he stated the source of the title as derived from said Jos. J. Wright, who was in possession of said lands from 1848 to 1857, when he sold (under bond for title) and delivered possession to Robert Thompson, who entered upon and continued in possession until 1862, when he sold and delivered possession to said John McKenzie and Jos. H. Wright, who, in the same year, sold and delivered possession to him, the said Robert T., and that said parties were, during the whole period of their respective possessions, in the actual, open, notorious, adverse and hostile possession of said lands, claiming and asserting ownership thereof. This affidavit referred to himself, as well as to those from whom said Robert T. Ashurst derived title.

On the same day, the complainant, J. V. Ashurst, made and signed an affidavit to the same effect as the one his father, the said Robt. T., had made. It was admitted by counsel on the trial of this cause, that said affidavits, the one by said Robt. T. and the other by the complainant, J. V. Ashurst, were made and delivered to the New England Mortgage Security Company for the purpose of satisfying said company that said Robt. T. had a perfect, good and unincumbered title to said lands, and to aid the said Robt. T. to obtain said loan

15

of $2,250, and which he did obtain from said company on or about the 23d March, 1882.

In September, 1886, not having paid off said mortgage, which then amounted to about $2,500, and shortly before the maturing of the same, and not having the means to pay it, said Robt. T. Ashurst employed Collier & Pinkard, of Montgomery, as his agents, either in person or through their agents in New York, to negotiate a loan for him for $3,000, and in his application therefor, as the evidence satisfactorily shows, he stated that the lands he proposed to mortgage to secure the loan were entirely free from incumbrances except the said mortgage to the New England Mortgage Security Company for $2,250, and his said agents, on such assurances, borrowed for him from the defendant, the London Company, the sum of $3,000, and said Ashurst executed his notes therefor, and a mortgage on said lands to secure the payment of the same; the mortgage and notes were executed in Alabama, and the notes bearing 8 per cent. interest, were payable at the Corbin Banking Company of New York. From the proceeds of this loan, the former mortgage to said Security Company was, by the direction of said Robt. T. Ashurst, paid off and discharged, leaving the latter mortgage free from that incumbrance.

It was admitted by counsel, in their agreement for trial, that both the said affidavits of the said Robert and the complainant, made by them respectively on the 3d of February, 1882, were made in order to enable said Robt. T. to procure said loan from the said New England Security Company, on lands to which he, the said Robert, had an unincumbered title; that these affidavits were afterwards, in 1886, submitted to the defendant London Company, by R. T. Ashurst and his agents, but without the knowledge of the complainant, as a part of the abstract of title of R. T. Ashurst, when he borrowed from said London Company the said loan of $3,000, and gave to it the mortgage on said lands of the 28th of Sept., 1886, under which said company claims; and it was further admitted, that the abstract of title used by said Robt. T. and his agent in 1882 to procure the loan from the Security Company, was the same abstract he presented and used through his agents, Collier & Pinkard, to procure the last loan in 1886, from the

London Company.

Appellant's contention is, that if these affidavits made by his father and himself in 1882 to procure the loan from the Security Company, were used by his father without his, appellant's consent in 1886, to procure the loan of that year from the London Company, he is not responsible in anywise for such use of his affidavit. We may waive a discussion of the admissibility of this evidence for the purpose for which it was sought to be introduced, since the other evidence is abundant and satisfactory to show that complainant knew of the latter loan and aided his father to procure it, without ever having disclosed the fact that he had or claimed any lien on the lands.

It is a striking fact, that the complainant, on his cross-examination by defendant company in this case, stated, in referring to the said first loan by said Security Company, that he "had nothing in the world to do with (his father's) securing this loan, directly or indirectly;" that he did not aid him, for he was in fact averse to his father's getting said loan; that he did not know, nor was he informed that said Robert T. had made application for said loan, and never saw the abstract of title submitted for the loan. He also swore that he did not remember, and had no recollection, whatever, of ever having made said affidavit, and had no recollection of the purpose for which it was made, if made. Yet, in the face of this, his counsel on this trial admitted, as we have seen, that said affidavit was made by appellant, and delivered for the purpose of satisfying said Security Company that R. T. Ashurst had a perfect, good and unincumbered title to said lands, and to aid said R. T. Ashurst to obtain said loan of $2,250, which he did obtain.

In respect to the last loan in 1886 by the London Company, the complainant filed his affidavit in the cause, which by agreement was accepted as his deposition, in which he states, "That it is utterly false and an entire falsification that I ever had anything whatever to do with the procurement of the loan of said corporation to Robert T. Ashurst, or that I knew of such loan being made or applied for, or that I ever rode over said lands with said Collier and pointed it out to him concerning said loan, or that I actively or otherwise participated in

obtaining said loan for said mortgage on said lands, etc."

On the other side, J. S. Pinkard, the agent of said Robt. T. Ashurst in obtaining this loan, swore that his best recollection was that complainant showed an active interest in his father obtaining the loan applied for; that he brought the title deeds concerning the land to the office of Collier & Pinkard, and otherwise showed an interest in his father's getting the money; that he in person made frequent inquiries of him, the witness, as to how the negotiation of his father was getting along, and that he was positive that complainant knew of the intended loan to R. T. Ashurst before it was made, and did aid him in procuring the same. The same witness testified that his recollection was that he examined the lands, and complainant rode over the same with him, but as to this, he would not be positive.

B. K. Collier testified, that he was a partner of J. S. Pinkard, and that his firm negotiated the loan of 1886 for Robt. T. Ashurst; that Mr. Ashurst came to his office with his son, J. V. Ashurst, and was introduced by his said son; that he, the said Robt. T., then made application for the loan, and a contract with Collier & Pinkard to pay them a certain sum to negotiate the same, and at the same time deposited with them the title deeds to the land; that he, Collier, afterwards went out to examine the lands, and stayed all night with complainant, J. V. Ashurst, and the next morning complainant and witness went out and made an examination of the farm, and also made an abstract of titles to the lands; that J. V. Ashurst had no connection with the abstract of the title, but at the time Robt. T. made the application for the loan, Jas. V. Ashurst gave his firm a history of the title, and told them where they could find on record the deeds, which Robt. T. happened not to have; that J. V. Ashurst furnished him with a horse and rode over the lands with him, showed him where the lines were and assisted thus far, in recommending the negotiation of the loan. He further stated, "When J. V. Ashurst introduced his father, Robt. T. Ashurst, he stated to me, that his father desired to procure a loan on his farm, lying in the counties of Macon and Tallapoosa, and at the same time traced for us the title from 1850 to 1886.

From this statement and review of the facts in this

cause, one is bound to conclude, that the complainant is infirm in his recollection of facts; that they have escaped his memory, and that it is made satisfactorily to appear by the great weight of the evidence, that he actively aided his father in procuring both of said loans, and by his conduct and declarations induced the defendant company to believe, and to act on the faith of what he said and did, that he had no lien on said lands, which he can now claim as superior to defendant's. The suggestion that complainant's conduct was not intended to affect the London Company, since he may not have known that his father was proposing to borrow from that particular company, is without force, since his representations to his father's agents were intended to influence any lender, whoever he might be—the defendant as well as any one else—from whom the agents might procure the loan. Aside, then, from the consideration of the defense set up, that the London Company was, as to complainant, a *bona fide* purchaser for value, without notice of any claim or lien of his—which there is evidence satisfactorily to show, but which defense, in the presence of the other one we are considering, it is unimportant now to consider—it must be concluded, that complainant has forever estopped himself from questioning the defendant company's superior claim on these lands, as a security for the money loaned to said Robt. T. Ashurst.

A principle of estoppel with which all others on that subject must be reconcilable, and which is applicable to all, and well sustained by the authorities, is, that "where the owner or person having an interest in property, represents another as the owner, or permits him to appear as such, or as having complete authority over it, he will be estopped to deny such ownership or authority against persons who, relying on his representations or silence, have purchased or acquired interest in the property. And, generally, when a person, by word or conduct, voluntarily induces another to act on a belief in the existence of a certain state of facts, he will be estopped against him, to allege a different state of facts."—7 Am. & Eng. Encyc. of Law, 18-19, and authorities there cited; 2 Herman on Est. §§953-957; *Sullivan v. Conway*, 81 Ala. 153; *Powers v. Harris*, 68 Ala. 409.

It is shown, that Collier & Pinkard and the Corbin

[Ashurst v. Ashurst.]

Banking Company of New York, were the agents acting together in procuring said loan for said Robt. T. Ashurst; that the mortgage and notes securing the loan were executed in Alabama and delivered by him to Collier & Pinkard, who resided here, and were transmitted by them to the Corbin Banking Company of New York, which company, on behalf of said Ashurst, delivered said papers to the agent of the London Company in New York, for his inspection and approval; that they were afterwards delivered back to the Corbin Banking Company, who, for said Ashurst, transmitted them to the company in London, and that said company, after their receipt, forwarded to said Corbin Banking Company for the borrower the full amount of the loan. It also appears, that out of the $3,000 so transmitted, the Corbin Company, by the direction of the borrower, R. T. Ashurst, paid off the full amount of the New England Security Company's prior mortgage on the lands, amounting to upwards of $2,400, leaving them unincumbered as to this latter loan, and the balance of the loan, after this, they transmitted to Collier & Pinkard at Montgomery, Alabama, who received the same and paid it over to said Robt. T. Ashurst.

The mortgage contained the provisions, that the mortgagor waived any and all right to claim exemption under the Constitution and laws of the State of Alabama, and contained this further provision, viz: "It is further agreed between the parties hereto, that the note herein described, and this mortgage shall be governed and construed by and under the laws of Alabama, where the same was made." Under the facts as above stated, it must be held, that the transaction was an Alabama, and not a New York, contract, governed by the laws of this State.—*A. F. L. M. Co. v. Sewell,* 92 Ala. 163; *Falls v. The Loan Co.,* 97 Ala. 417; *George v. N. E. M. S. Co.,* 109 Ala. 548.

From the view we take of the case, it is unnecessary to consider the other questions raised and discussed. The decree of the court below is affirmed.

Affirmed.

COLEMAN, J., non-concurs in the conclusion that the complainant is not entitled to relief and that the decree should be affirmed.