# Harris *v.* American Building & Loan Association.

*Bill in Equity to annul Cancellation of Mortgage.*

1. *Priority of mortgage; estoppel.*—A note and mortgage were executed to one C. and subsequently assigned by him to a bank. Thereafter the mortgagor applied to a building and loan association for a loan. Application showed the existence of the prior mortgage outstanding in C. A local board of appraisers was appointed by the building and loan association, among whom was the cashier of the bank to which the note and

mortgage had been assigned by C. The cashier did not communicate to the building and loan association that the bank had a claim on the property, but recommended the association to make the loan. The president of the bank also wrote to the association recommending the loan, but did not disclose that the bank had any claim on the property. It was insisted by all the parties that the loan from the association was made for the purpose of paying off the original mortgage debt. The money was paid to C. and the mortgage was cancelled by him and marked satisfied on the margin of the record. *Held*: That as against the building and loan association the bank and any one claiming under it was estopped to set up that the satisfaction of the mortgage was unauthorized and invalid.

2. *Cashier of bank; notice to him is notice to the corporation.* Notice received or knowledge acquired by the cashier of a bank, while engaged in the transaction of business, in accordance with the general usage and practice of banking institutions, and within the general apparent line of his duty and authority as cashier, is notice to and knowledge of the bank.

APPEAL from the Chancery Court of Colbert.

Heard before the Hon. WILLIAM H. SIMPSON.

The following state of facts is shown by the record on this appeal: On September 12, 1887, Harvey H. Brumbach and Susan H. Brumbach, his wife, became indebted, nominally, to one James R. Crowe, in the sum of four thousand dollars, for which they executed their note, payable to his order, ninety days after date, at the First National Bank of Sheffield, Ala., and to secure its payment executed a mortgage to the payee on seven lots in the city of Sheffield, on two of which was situated a hotel building, with other improvements, styled the Park House. These lots were numbered 10 and 11, in block 15½; and the bone of contention in this cause is, to which mortgagee, complainant or the American Building & Loan Association, belongs the priority of lien upon them. The note of Brumbach and wife was transferred and indorsed, at the time or soon after its execution, to the First National Bank of Sheffield by the payee named, James R. Crowe. There is evidence tending to show that the money for which the note was made was lent the Brumbachs by that bank. The note first made was not paid at maturity, but was re-

newed in the same form and terms, with the same par-
ties several times, and was, eventually, divided into four
notes of one thousand dollars each. These, in turn, were
several times renewed, in like form and terms, payable
to said Crowe, by whom they were indorsed to the bank,
which held the mortgage from the inception of the trans-
action.

This method of doing things continued until the fail-
ure of the bank on November 29th, 1889, at which time
the four Brumbach notes were owned by the bank, but
were held by certain of its creditors as collateral for its
indebtedness. The mortgage given to secure the indebt-
edness, when originally contracted, remained in the
hands of the bank, the agreement having been, as the
various renewals occurred, that it should stand as se-
curity for the indebtedness. It was filed for record Jan-
uary 16th, 1889. It was conditioned for the payment of
an indebtedness of $4,000, on September 12th, 1888; and
was expressly subject to any indebtedness of the pur-
chase money for the property embraced in it. The last
four notes in the series of renewals were unpaid at the
time of the failure of the bank, and were held by the fol-
lowing named creditors of the bank as collateral secur-
ity: One by the Sheffield Land, Iron & Coal Company of
Alabama, which was afterwards paid to it; two were
then held by two New York Banks, and were by them
turned over and surrendered to the receiver of the Shef-
field bank, R. W. Austin, from whom the creditor banks
took receiver's certificates of claims proved, entitling
them to share in the dividends distributed; and the
Nashville Trust and Banking Company, having realized
its debt from other collateral in its hands, returned the
other Brumbach note, which it held, to the receiver of
the Sheffield bank.

In the summer of 1889, after the debt to the bank had
been contracted, and after the mortgage executed to se-
cure the same had been duly recorded, H. H. Brumbach
applied to the American Building & Loan Association,
appellee, for a loan of $5,000, offering as security there-
for his stock in said association and a mort-
gage on lots 10 and 11, in block 15½, in Shef-
field, on which were the Park House and improve-

ments, and which were embraced in the mortgage to Crowe for the bank loan, then held by the bank. At the time of such application, the Building & Loan Association had created and established at Sheffield a local board or branch of the association, under sections 1, 2, and 5 of article 9 of the by-laws of the corporation. This board consisted of a president, secretary, treasurer, attorney and board of directors. In his application, after giving a description of the property he proposed to mortgage as security, its value, rental and improvements, Brumbach in response to the question in the application blank: "Are there any mortgages or judgments against the property?" answered: "Four thousand dollars mortgage on it." This application first passed through the hands of the local board at Sheffield, by which the property was appraised, and the loan was recommended over the signatures of the directors of the said local board. When this application and appraisal and recommendation of the local board reached the main office, it was approved, on September 5th, 1889, for four thousand, five hundred dollars. An abstract of title was furnished and traces the title of the property from the government, through intermediate owners, to Brumbach, notes the mortgage made by Brumbach to the appellee, the Building & Loan Association, recorded December 31st, 1889, but omits any reference to the mortgage on the property made to Crowe and held by the bank, which was recorded on January 16th, 1889, nearly a year before that to the association. This omission is explained by testimony to the effect that it was agreed that the money received by Brumbach on the loan from the Building & Loan Association, was to be applied to the payment of the four notes, into which, by renewals, the debt secured by the mortgage to Crowe had been divided. But there was no authority from the First National Bank of Sheffield, or any of its officers, or any of the holders of the notes, except Allen, for the Sheffield Land, Iron & Coal Company of Alabama, to satisfy the mortgage, or affect, dispose of, or bind their several interests in any manner. Crowe testified that, although he knew that the notes had been

transferred, that the loan they represented had been, in fact, made by the First National Bank to Brumbach, and that none of these notes had then been paid, but were then held by others, he supposed he had the right to satisfy and discharge the mortgage.

While Austin was receiver of the bank, which had indorsed the notes to other banks as collateral, he filed a bill in the chancery court of Colbert county to set aside the cancellation of the mortgage, and thus protect the bank as indorser of the Brumbach notes. During its pendency, the banks which held the Brumbach notes turned them into the receiver's hands, taking his certificate of their debts, and sharing in the dividends of the bank's funds, except the Nashville bank, which returned its collaterals after its debt was realized; and after this, upon the orders of the Comptroller of the Currency, to sell all the uncollected assets of the bank and wind up his receivership trust, these notes, with the mortgage, were sold by Austin, and bought by C. L. Harris, the complainant. Thereupon the receiver, having no further interest for his bank, directly or as indorser, in the notes, the suit in chancery was allowed to be dismissed by default.

The object of Austin's bill, as already stated, was to annul the entry of satisfaction of the mortgage of Brumbach and wife to James R. Crowe, which Crowe, after the transfer of the notes for the secured debt and his delivery of the mortgage to the First National Bank, had undertaken to satisfy and discharge by the following entry on the margin of the record of said mortgage: "This mortgage is satisfied in full. January 13th, 1890. James R. Crowe." This was after the execution of the mortgage of Brumbach and wife to the Building & Loan Association, which was on December 23, 1889. Brumbach and wife failing to pay the debt to the Building & Loan Association, that corporation foreclosed by sale under the power contained in the mortgage, and purchased the Park House property at its own sale, executed a deed to itself on the 5th day of December, 1892.

It went into the possession of the property immediately after the sale, and is still in possession of it, receiving the rents and profits, and claiming the same under its purchase.

The bill in this case was filed on January 5th, 1895, by said C. L. Harris, the purchaser of the three unpaid Brumbach notes, at the sale by Austin; and the receiver of the First National Bank of Sheffield, and the mortgagors, Brumbach and wife, and the American Building & Loan Association, of Minneapolis, Minnesota, are made defendants. It prays that the attempted and unauthorized cancellation on the mortgage record by Crowe may be annulled and treated as of no effect, and that the indebtedness represented by the notes held by the complainant may be secured by said mortgage, and the same enforced and foreclosed as a first and paramount incumbrance on the said Park House property, prior and superior to that of the Brumbachs to the said Building & Loan Association, and the proceeds of the foreclosure sale applied primarily to the complainant's debt.

The answer of the defendant, the Building & Loan Association, avers that the indebtedness created by Brumbach and wife, and secured by the mortgage sought to be foreclosed, was nominally to Crowe, but was actually a debt to the First National Bank of Sheffield, by which it is alleged $2,500 was applied to paying a debt of that amount due from Brumbach for the property involved in this suit, to the Sheffield Land, Iron & Coal Company of Alabama, and $1,500 additional advanced by the bank to Brumbach, thereby making the $4,000 for which the mortgage from the Brumbachs and the first note of $4,000 to Crowe was executed; and that, in order to evade the national banking law, prohibiting a national bank from lending money on real estate security, the bank used Crowe simply as a dummy on the note and mortgage, and as its agent to effect this transaction. In addition to this ground, the answer sets up, that the mortgage was satisfied and cancelled of record by James R. Crowe, the mortgagee named therein, with the knowledge and consent of the First National Bank, which was

then the holder and owner of the notes and that neither the receiver of the bank, nor complainant, as purchaser from him, can now ask to have said satisfaction annulled, and that complainant knew that said mortgage had been discharged when he bought said notes. In another part of its answer, said association avers that the bank was not the owner or holder of the notes at the time of the Brumbach loan and mortgage, but had transferred them to other parties, denies that the mortgage was executed and delivered to the association before the one to Crowe was satisfied, and repeats, that the bank knew of Brumbach's application for a loan from the association, and assented to the cancellation of the Crowe mortgage. It does not deny the execution and renewals of the Brumbach notes, or the agreement that the mortgage to Crowe should stand as security for the renewals, or the transfers of the notes to creditors of the bank, their re-delivery to Austin, the bank receiver, and the sale by him to complainant. It admits that Brumbach's application showed an incumbrance on the property of $4,000, secured by mortgage, the failure of the abstract of title furnished the association to disclose the mortgage, or its satisfaction of record, the want of interest in Crowe, the mortgagee in the first mortgage, in the debt secured by that instrument, and his entry of satisfaction on the record at a date subsequent to the filing of its mortgage.

Upon these pleadings and undisputed facts, the chancellor rendered a final decree, holding that the complainant was not entitled to any relief against the American Building & Loan Association, that the mortgage to the latter from the Brumbachs was superior to that which complainant sought to foreclose, and dismissed the bill as to said association.

From this decree the present appeal is prosecuted, and the rendition thereof is assigned as error.

ROBERT H. WILHOYTE, for appellant.—That notice to an agent will bind the principal is an accepted doctrine in all matters, but where a corporation is concerned, it cannot be dispensed with, because that is the only mode

by which such inanimate body can act or be acted upon. Wade on Notice, § 96; 4 Thompson on Corporations, § 5237. Was not the association represented throughout this whole transaction by an agent? An agent is one who, by appointment, undertakes the performance of a duty for another. The primary agents of such a corporation as this, as in all others, are the officers and directors. Among these officers an attorney is often one, and when he is, the effect of notice to him is the same as notice to any other officer of the corporation.—4 Amer. & Eng. Encyc. of Law, 1012, 1013, 1014.

In answer to the contention that the building and loan association is the *bona fide* purchaser and entitled to protection as such, it is sufficient to say that the appellee does not set up, that it is an innocent purchaser; one of the essentials of that defense being, that the purchaser had no notice of complainant's equity and knew no fact calculated to put him on inquiry, either at the time of the purchase, or at or before the passing of the consideration.—*Craft v. Russell*, 67 Ala. 9; *Hooper v. Strahan*, 71 Ala. 75; *May v. Wilkinson*, 76 Ala. 543; *Webb v. Elyton Land Co.*, 105 Ala. 471.

KIRK & ALMON, *contra.*—The complainant claiming under the Bank of Sheffield is estopped to deny the priority of the mortgage given to the building and loan association.—2 Herman on Estoppel, 1063; *Chapman v. Hamilton*, 19 Ala. 121; 3 Brick. Dig., 448; § § 29, 30, 31.

"Notice received or knowledge acquired by the cashier of a bank, while engaged in the transaction of the business * * * is notice to and knowledge of the bank."—*Birmingham T. & S. Co. v. Nat. Bank*, 99 Ala. 379.

In the case of *Bank of U. S. v. Davis*, 2 Hill 451, Chief Justice NELSON, delivering the opinion of the court, said: "I agree that notice to a director or knowledge derived by him, while not engaged officially in the business of the bank, can not and should not operate to the prejudice of the bank."—2 Hill. 457; *Fulton Bank v. N. Y. & S. C. Co.*, 4 Paige 127; Story on Agency, (9th ed.) 164, n. 2. This same principle is recognized in the case of *Birmingham T. & S. Co. v. Nat. Bank*, 99 Ala. 379.

HARALSON, J.—We may waive consideration of all other questions presented in this record, except the one, that complainant is estopped to claim any rights as growing out of the Crowe mortgage to H. H. Brumbach.

It was shown that C. D. Woodson was the president of the Sheffield bank at the time Brumbach made application to the defendant for the loan and that T. L. Benham was its cashier. It also appears, that the defendant had in Sheffield at the time a local board of appraisers, one of whom was the said Benham; that he with others having the application of said Brumbach for the loan to the association in writing before them stated that the condition of the property was truly set forth by the applicant in his statement which accompanied their report; that the loan was a desirable one for the association to make and they recommended it to be made. The application showed the $4,000 mortgage, and the proof is abundantly satisfactory, that the Crowe mortgage and none other was referred to in the application. Here we have, then, the indubitable proof that the Sheffield bank, through this officer, was engaged in aiding to procure this loan to be made by respondent, that he neither said nor communicated anything to the lendee about any claim his bank had on the property he was recommending it to take a mortgage on to secure the loan, which loan, as appears, the borrower, Brumbach, was seeking in the interest of the bank. Moreover, Chas. D. Woodson, the president of said bank, on the 16th September, 1889, wrote a letter to the respondent association, which appears in the transcript, telling it that the stockholders in Sheffield were very much dissatisfied in the way the association treated them in getting loans, and complains especially of Brumbach's not getting the money on his application. He and the cashier both knew of this application, were insistent for the loan to be made, for purposes not left open to doubt, and never disclosed that their bank had any claim or lien on the property to be mortgaged to the association to secure the loan. Knowledge on their part of this proposed loan, and their conduct to procure it to be made, was the knowledge and act of the bank. The corporation cannot

see or know or do anything except through the intelligence and act of its officers. It was said by this court in the case of *Birmingham T. & S. Co. v. Louisiana N. Bank,* 99 Ala. 379, in respect to its cashier: "He is the executive officer, held out to the public as having authority to act according to the general usage, practice and course of business of such institutions; and his acts and dealings, within the scope of such usage, practice and course of business, bind the corporation in favor of those dealing with him, not having other knowledge."

It is a just and well recognized principle, that "He who is silent when conscience requires him to speak, shall be debarred from speaking when conscience requires him to keep silent;" and again, "When a party negligently and culpably stands by and allows another to contract on the faith of an understanding which he can contradict, he is afterwards estopped from disputing the facts in an action against the person whom he has assisted in deceiving, upon the principle, that between innocent parties, he who causes the injury must suffer."—2 Her. on Est., § § 937, 938. Or, to state the principle still more pertinently to the facts of this case: "If one having an incumbrance or security upon an estate conceals his interest, and thereby enables the owner to procure an additional advance upon it, he must be postponed to the second incumbrance."—1 Story Eq., § 390; *Chapman v. Hamilton,* 19 Ala. 124; *Ashurst v. Ashurst,* 119 Ala. 219.

The mortgage of respondent is superior in equity to that of the bank through which complainant claims. The complainant can claim no greater rights in opposition to respondent than the bank could, if it were suing. If the bank in such case would be estopped to set up the Crowe mortgage as superior to that of respondent, the complainant deriving his alleged claim through the bank, is also estopped. There is no pretense of any fraud, but the utmost good faith on the part of the respondent in the transaction is shown.—3 Brick. Dig. 448, § 29.

Affirmed.