## 8656. CUTHBERT ICE COMPANY *v.* YORK MANUFAC-TURING COMPANY.

1. Under the facts of the case, as disclosed by the pleadings, the court did not err in sustaining the demurrer interposed to the defendant's original plea and answer, and in striking the 4th, 5th, 6th, 7th, 8th, 9th, and 10th paragraphs thereof. It was likewise not error for the court to sustain the demurrer to the amended plea and answer of the defendant and to strike the entire amended answer. Neither the original nor the amended answer set out any valid legal defense to the suit.

2. The exception to the judgment overruling the defendant's demurrer to the amended petition, not having been referred to in the brief of counsel for the plaintiff in error, is treated as abandoned.

**3.** The court did not err in directing a verdict against the defendant for the full amount sued for, including attorney's fees.

(*a*) Although the defendant in its answer denied having received the statutory notice necessary to bind it for the payment of attorney's fees, and although the giving of such notice was not shown by the proof, the conduct of counsel for the defendant, upon the trial, was such as to estop him from raising this question thereafter.

DECIDED JULY 26, 1917.

Complaint; from Randolph superior court—Judge Worrill. November 6, 1916.

Machinery for an ice manufacturing plant was sold by the York Manufacturing Company to the Cuthbert Ice Manufacturing Company under a written contract made in December, 1911, and, after installation of the machinery, the purchaser gave purchase-money notes, dated in June, 1912, and due in December, 1912. This suit was based on renewal notes given on the date of maturity of the original notes. The written contract of December, 1911, warranted, under certain conditions, the workmanship and material of the plant for one year, and that it would have a capacity for making 15 tons of ice per day of 24 hours, and provided as follows: "If for a period of 30 days after the machinery, apparatus, or plant furnished hereunder is erected ready to charge, the purchaser shall fail to notify the York Manufacturing Company in writing of any claim that the said machinery, apparatus, or plant as furnished does not fulfill the terms and requirements of the contract, specifying in what particular or particulars it fails, this shall in itself be considered an acknowledgment by the purchaser that the said machinery, apparatus, or plant as furnished does fulfill the said terms and requirements, and shall constitute a complete acceptance of the same as fulfilling all the terms and requirements of the contract." The defendant, in its orignial answer (paragraphs 4 to 10 inclusive), alleged, that the plant and equipment for which the notes sued on were given were installed and delivered in April, 1912, under the warranty that when installed the plant would manufacture on a continuous run 15 tons of ice per day of 24 hours, but in fact it did not and could not manufacture more than 12½ tons per day of 24 hours on a continuous run; that the boiler furnished as a part of the equipment was of insufficient capacity, and the plant was otherwise not capable of manufacturing the warranted tonnage of ice, because

of the insufficient number of brine and condensing coils; and that in consequence of this lack of capacity to manufacture the warranted output, the defendant suffered loss and damage, to an extent specified, and it prayed judgment against the plaintiff in a stated sum. The court, on demurrer, struck these paragraphs of the answer. In the demurrer it was contended that no defense was set up therein, for the reason that it was not shown that the defendant complied with the contract by giving the written notice of defects within the time specified in the contract; that it was not shown that the defendant did not know of the alleged defects at the time the notes sued on were given; and that the alleged damages were remote, speculative, uncertain, and indefinite.

By amendment the defendant repeated substantially the stricken paragraphs and further pleaded as follows: "Defendant is not estopped to raise the defense hereinbefore set forth because of its failure to give plaintiff 30 days written notice that said plant and equipment as furnished did not fulfill the requirements and terms of said contract; . . for the reason that said provision of said contract is and was unreasonable and impossible of performance by defendant, for the reason that said plant and equipment was installed and delivered to defendant at a season of the year when the weather was cool and of such temperature as to enable said plant and equipment to manufacture the warranted tonnage of ice for a greater period than 30 days from the installation and initial operation of said plant. Defendant further shows that as the summer season advanced, and under a higher temperature, said plant and equipment, under repeated tests and usage, developed an incapacity to manufacture and produce its warranted tonnage of ice as aforesaid; and defendant, because of the facts alleged, was unable to discover, by the exercise of ordinary means or diligence, within said period of 30 days, the defects now complained of. Defendant shows that under the terms of said contract said plant, including material and workmanship, was guaranteed for a period of one year from its installation, notwithstanding the aforesaid provision of said contract requiring defendant to file with plaintiff written complaint of such defects within 30 days from the installation of said machinery. Defendant now knows and alleges that said plant and equipment, because of defective and insufficient material and workmanship, was never capacitated to produce and

manufacture 24 [?] tons of ice per day of 24 hours on a continuous run, and gave plaintiff written notice as well as oral notice of said defects as soon as the same became known by defendant. . . Oral notice of said defects was given to a representative of plaintiff, now unknown to defendant, who waived the terms of said written contract providing for the forfeiture of defendant's right to raise said defense after said period of 30 days, by an inspection of said plant and equipment and direction of certain changes to be made, alleged to be necessary to bring said plant up to its warranted capacity. . . The execution of said renewal notes sued on did not constitute a new contract between plaintiff and defendant, or deny to defendant the right to raise the defense herein set up, said renewal notes being executed by virtue of and as a part of said original contract." The plaintiff's demurrer was renewed as to the amendment to the answer, and the court struck the amendment.

*George H. Perry,* for plaintiff in error, cited: McDaniel v. Mallary Brothers Machinery Co., 6 Ga. App. 848; Hill v. Western Union Telegraph Co., 85 Ga. 425; Arnold v. L. & N. R. Co., 4 Ga. App. 519, and cit.

*James W. Harris,* contra, cited: Fay & Eagan Co. v. Dudley, 129 Ga. 314, 318; International Harvester Co. v. Dillon, 126 Ga. 672; McCormick Harvester Machine Co. v. Allison, 116 Ga. 445; City of Moultrie v. Schofield's Sons Co., 6 Ga. App. 464; Sizemore v. Woolard, 3 Ga. App. 261 (2); Stimpson Computing Scale Co. v. Taylor, 4 Ga. App. 567 (2); Edison General Electric Co. v. Blount, 96 Ga. 272; Lunsford v. Malsby, 101 Ga. 39; American Car Co. v. Atlanta Street Ry. Co., 100 Ga. 254; Montfort v. Americus Guano Co., 108 Ga. 12; Harder v. Carter, 97 Ga. 273; 16 Cyc. 585 et seq.

BROYLES, P. J. The third headnote (subdivision *a*) alone requires elaboration. This was a suit on two promissory notes, for principal, interest, and attorney's fees. The petition alleged that the statutory notice as to the claim for attorney's fees had been given. This allegation was denied by the defendant in its answer. As shown by the bill of exceptions, after the plaintiff closed its evidence (and no evidence showing the giving of such notice had been introduced), "the court inquired of plaintiff's counsel if there was any claim to attorney's fees in the suit, whereupon,

plaintiff's counsel announced in his place that there was and that he had served defendants with written notice of suit for the purpose of binding defendants in the payment of attorney's fees, such statement not being made under oath by plaintiff's counsel as a witness in said case." Upon this point is the following note of the trial judge, embodied in and made a part of the bill of exceptions: "The court also asked plaintiff's counsel if the petition alleged that notice of the claim of attorney's fees had been given defendant before suit as required by the statute. Counsel for plaintiff answered that it had. The court then asked if defendant had denied such allegation in its answer, to which plaintiff's counsel answered that it had not. All this occurred in the presence and hearing of defendant's counsel, who knew the court was under the impression that there existed no issue about attorney's fees and who said nothing to the contrary, when the court stated that inasmuch as no contested issue was left, a verdict would be directed, and the court did then direct a verdict for plaintiff. If counsel for defendant had notified the court that such issue was contested and that he desired to be heard on it, the court would have allowed it. The court thought defendant's counsel assented to the correctness of the statement of counsel for plaintiff."

In the light of this note of the trial judge we think it was clearly the duty of counsel for the defendant, under the circumstances narrated, to speak up and notify the court that the defendant had in its answer denied receiving the notice as to attorney's fees. An attorney in a case is not only the champion of his client, but is also an officer of the court, and the obligation rests upon him during the trial of the case to assist the court, and to furnish to it all the light possible. His duty is not only not actively to deceive the court as to any fact of the case, but, if possible, not to permit opposing counsel to do so. It appears in this case that the court, in seeking information as to an important fact, called upon counsel for the plaintiff for enlightenment, and that such counsel inadvertently misled the court by giving erroneous information, and that counsel for the defendant, knowing this and himself having the correct information, instead of giving it to the court, remained silent and allowed the court to be deceived. We think such conduct of counsel estopped him, in good conscience and equity, from taking advantage of such an error. Fraud amounting to an es-

toppel may be committed by silence. Civil Code (1910), § 4419. As was said by this court in *National Duck Mills* v. *Catlin*, 10 *Ga. App.* 246 (73 S. E. 421): "The general rule of estoppel by silent acquiescence . . has been of long standing, and has received repeated recognition from the highest courts of this State." Acquiescence or silence, when the circumstances require an answer, or other conduct, may amount to an admission. Civil Code (1910), § 5782. "Estoppel by silence arises where a person who by force of circumstances is under a duty to speak refrains from doing so and thereby leads the other to believe in the existence of a state of facts in reliance upon which he acts to his prejudice." 16 Cyc. 681. "Negligent silence may work an estoppel as effectually as an express representation." Tobias v. Morris, 126 Ala. 535, 551 (28 So. 517). "It is a just and well-recognized principle, that 'He who is silent when conscience requires him to speak shall be debarred from speaking when conscience requires him to keep silent.'" Harris v. American Building etc. Association, 122 Ala. 545, 554 (25 So. 200). "Silence is a species of conduct and constitutes an implied representation of the existence of the state of facts in question, and the estoppel is accordingly a species of estoppel by misrepresentation." 16 Cyc. 181, note 10. "An equitable estoppel arises upon a state of facts which renders its application in the protection of rights equitable and just." 16 Cyc. 682. In later cases the wisdom and justice of the principle of estoppel *in pais*, or equitable estoppel, are fully recognized, and the common saying in the earlier reports that estoppels are odious and are not favored in law is no longer approved. 16 Cyc. 683, 684.

In the instant case, when counsel for the defendant, who was an officer of the court, by his silence allowed the court to believe erroneously that the giving of the notice as to attorney's fees had not been denied by the defendant, and that there was no issue on this point, he was, in our judgment, estopped by this conduct from raising this question after the direction of the verdict against his client. While it was considered necessary, in elaborating our ruling, to comment plainly and forcibly on such conduct, it was not intended as a harsh or severe criticism of one who, we doubt not, believed he was entirely within his legal rights, under the circum-

stances, in remaining silent. The ugly-sounding word "fraud" is of course herein used in its legal sense only.

Under the peculiar facts of this case the plaintiff in error will not be heard to complain that the court directed a verdict against it for the attorney's fees.

*Judgment affirmed. Jenkins and Bloodworth, JJ., concur.*