# Louisville & Nashville Railroad Co. *v.* Duncan & Orr.

*Action against Railroad Company as Common Carrier.*

1. *Pleading and practice; when complaint fails to state cause of action by reason of alternative averments.*—A complaint which contains alternative averments of the existence of one, or, if not that one then of another, of two entirely distinct and different causes of action against the defendant in distinct and different capacities, is not the alternative averment of either.

[Louisville & Nashville R. R. Co. v. Duncan & Orr.]

of the causes of action referred to. and therefore fails to aver any cause of action whatever.

2. *Same; same; action against common carrier.*—In an action against a railroad company as common carrier, a complaint which avers that the plaintiff delivered to the defendant a lot of horses and mules to be carried to a certain designated place of destination, that defendant accepted said stock and it became and was its duty to carry said stock with reasonable speed to said place of destination, "or with reasonable speed to deliver said stock to one of its connections which could carry said stock with all reasonable speed to said" place of destination, but notwithstanding said duty the defendant delivered said stock to that one of its connections that had a long and circuitous route to said place of destination instead of that one which had a shorter and more direct route thereto "or instead of carrying said stock itself to said" place of destination, and by reason thereof the said stock was injured, does not state a cause of action.

3. *Common carrier; duty of common carrier when connecting route refuses to accept shipment.*—Where a railroad company accepts stock for shipment to a point not on its line of road which is to be carried to its place of destination over connecting lines, and by the terms of the contract of shipment the defendant was to transport the stock to a point along its line and there deliver it to a connecting carrier for transportation to the place of destination, if upon the stock arriving at the place on the accepting carrier's line where it was to be delivered to the connecting carrier, the connecting carrier having the most direct route for transportation at said point to the place of destination refuses to accept it for carriage thereto, it is then the accepting carrier's duty to give notice of that fact to the consignors in order that they may give further directions as to routing the consignment.

4. *Action against common carrier; admissibility of parol evidence as to routing of shipment.*—In an action against a common carrier for damages alleged to have been sustained by live stock delivered to the defendant for shipment to a point beyond the defendant's line and on a connecting line, where at the point along the defendant's line at which the stock shipped was to be delivered to a connecting line for transportation to the place of destination, there were several connecting lines by which the shipment could be routed and the bill of lading failed to specify which one of said connecting lines said stock should be shipped over, it is competent to introduce parol evidence showing that the consignors gave directions for the consignment to go from the connecting point over a certain route.

5. *Common carrier; duty of. railroad company as forwarding agent of consignor.*—Where freight is delivered to a railroad company for carriage to a point not on the receiving carrier's line, upon the freight arriving at the point on the receiving carrier's line at which it is to be delivered to connecting carrier for transportation to the point of destination, it is the duty of the receiving carrier as forwarding agent of the consignor to exercise the same care in selecting a carrier or succession of carriers from the connecting point to the place of destination as the owner, being a man of ordinary care and prudence, would have exercised had he been present and as fully acquainted with all the lines and connections as was the receiving carrier.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. A. A. COLEMAN.

This action was brought by the appellees, James C. Duncan and Joe C. Orr, against the appellant, Louisville & Nashville Railroad Company. The complaint is set out at length in the opinion. The defendant demurred to this complaint, but the demurrer was overruled by the court, and to this ruling the defendant duly excepted.

On the trial of the case, the following facts were shown: Plaintiffs delivered the live stock to defendant at Birmingham, Sunday, November 5th, 1899, at noon. Before delivery one of the plaintiffs and defendant's agent executed the contract which was attached as Exhibit "A" to the bill of exceptions. Against defendant's objection and exception, the court admitted evidence of a conversation between one of the plaintiffs and said agent, to the effect that the agent said to plaintiff, in response to his inquiry, that the stock ought to arrive at Thomasville, Georgia, a station near Greenville, Florida, on the Plant System, at nine or ten o'clock Monday night; that plaintiff objected because the written contract failed to show that the shipment was routed by the Plant System; that in reply to this objection the agent said the shipment would go that way and the way-bill would show the routing, and that it was unnecessary for the written contract to show it. The testimony of plaintiffs also tended to show that another of defendant's

[Louisville & Nashville R. R. Co. v. Duncan & Orr.]

agents issued free transportation to one of the plaintiffs on the contract of shipment to Montgomery, and told him that on presentation of his contract to the Plant System at Montgomery, free transportation would be issued him to Thomasville, Georgia, and that said plaintiff went from Birmingham on a passenger train to Thomasville, Georgia, on the day of the shipment, and there first learned that the shipment had not been routed by the Plant System. The evidence showed that the shortest route from Birmingham to Greenville was by way of the Plant System from Montgomery; that the next shortest route was by way of the Georgia & Alabama Railroad from Montgomery to Cordele, Georgia, where connection was made with the Georgia Southern & Florida Railroad; thence on that railroad to Lake City, Florida, where it connected with the Florida Central & Peninsular Railroad, and thence on the latter railroad to Greenville, Florida. The evidence showed that each of said railroads formed connections with and received shipments of similar character from the other at the time plaintiffs' stock was being transported, forming a through route between Montgomery and Greenville via Cordele and Lake City, 382 miles long. The evidence showed that there was another route by way of the defendant's railroad to River Junction, Florida, and thence over the Florida Central & Peninsular Railroad to Greenville, which was 408 miles long, 26 miles longer than the previous route. The other route (which plaintiffs contended the shipment in fact took) was *via* the Georgia & Alabama Railroad from Montgomery, eastward by way of Cordele, to Savannah, thence southward over the Seaboard 'Air Line to Baldwin, Florida, and thence westward over the Florida Central & Peninsular to Greenville. Taking this latter route it was necessary to transport the stock in order to reach Savannah, 168 miles east of and beyond Cordele, on the Georgia & Alabama Railroad, and westward practically the same distance from Baldwin to Lake City, which is about south of Cordele. The route via Savannah and Baldwin was thus about 325 miles longer than that via Cordele and Lake City. Each of these routes left Montgomery east-

29c

ward over the Georgia & Alabama Railroad, one diverging south at Cordele and the other 168 miles further east at Savannah. The evidence showed that the Georgia & Alabama Railroad Company received the shipment from defendant at Montgomery unhampered by any instructions as to its routing beyond Montgomery, other than that its ultimate destination was Greenville, Florida. The evidence also showed that the connections of the Georgia & Alabama Railroad at Cordele and Lake City were such at the time of shipment that it could have routed the shipment that way.

The evidence showed that plaintiffs' stock reached Montgomery about six p. m. Sunday; that upon arrival there the way-bill on which the stock was billed was delivered to one Walton, who had charge of the distribution of cars arriving on defendant's road, and destined to points beyond it to the proper connecting carrier; that upon receipt of the way-bill said Walton tendered said car of stock by telephone message to the office of the Alabama Midland Railroad or Plant System; that this was the proper office to which to make such tender, and that it was usual to make such tenders of shipment over the telephone to connecting lines, including the Plant System; that the person in the office of the Plant System, who responded to Walton's telephone message, declined to accept the shipment tendered it, stating that his company had a rule prohibiting it from handling shipments for points on the Florida Central & Peninsular Railroad on which Greenville was located; that said Walton then explained that the shipment was of live stock and that the person at the telephone replied that this made no difference as the rule was arbitrary not to accept shipments of any character for points on that road. The evidence shows that Walton then called up defendant's yard office and ascertained that neither plaintiffs nor their agent accompanied the car of stock, and that said Walton then called up the Georgia & Alabama Railroad Company's local office at Montgomery and tendered the stock to it; that according to the usual course of business, shipments for Greenville when refused by the Plant System were next tendered to the Georgia & Alabama Railroad Com-

pany; that the car was accepted by that company; that said Walton then ordered the car to be placed on the receiving track of said railroad company, and that the stock after having been unloaded and fed was reloaded in the same car and so placed; that this was the usual way of delivering shipments to the Georgia & Alabama Railroad Company; that a way-bill was delivered to said railroad company by defendant as its authority for transporting said shipment to point of destination. The evidence showed that after the arrival of the shipment at Montgomery it was delivered with shipping directions to the Georgia & Alabama Railroad Company in time to take the first train on that road going east from Montgomery, and which left Montgomery about 4:00 a. m. Monday. The evidence also showed that the defendant did not notify plaintiff before routing the shipment over the Georgia & Alabama Railroad, and that the only effort made to communicate with plaintiffs after the shipment was refused by the Plant System was to ascertain that no one accompanied the stock to Montgomery. The evidence showed that the car of stock left Montgomery on the first train going east on the Georgia & Alabama Railroad after the shipment arrived in Montgomery and was next seen, so far as disclosed by the evidence, coming into Greenville from the direction of both Lake City and Savannah on a freight train of the Florida Central & Peninsular Railroad. The only other evidence tending to show that the shipment had gone by way of Savannah were certain bills purporting to be for feeding the stock en route between Savannah and Greenville, which were forwarded to the agent at Greenville by the connecting carriers for collection and which were by him collected from plaintiffs. The evidence also showed that the stock on arrival at Greenville was damaged, and further tended to show that the amount of damage done was the usual amount done by a railroad journey of five days' duration without rough handling. The stock in fact was in transit from Sunday noon to Thursday afternoon, about four days. The shipment arrived in the same car it left Birmingham in and consisted of twenty horses and six mules. The evidence showed that the directions for shipping the stock meant they were to go via Montgom-

ery, and that according to the custom on all railroads shipments routed by way of a certain station on the initial carrier's line were to be carried on its line only to such station and there delivered for further transportation to some other connecting line.

Under the opinion on present appeal it is unnecessary to set out the several rulings of the court. From a judgment in favor of the plaintiffs, assessing their damages at $472.50, the defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

J. M. FALKNER and W. I. GRUBB, for appellants.—The record shows that by the contract under which the stock was shipped appellant's liability as a carrier ceased upon arrival of the stock at Montgomery when ready for delivery to the next succeeding carrier, and that at this time the stock was in good condition, had suffered no damage, and had been transported to this point with reasonable expedition. The damage occurred on a connecting carrier's line, and the only contested question was whether appellant exercised reasonable care in forwarding the shipment by the carrier on whose line the delay occurred. In its relation of forwarder and in its selection of a connecting carrier, appellant was held liable for the failure to exercise ordinary care, and the burden was on appellees to prove such failure.—13 Am. & Eng. Ency. Law (new ed.), pp. 1167-68-69. In selecting a common carrier to transport the shipment from Montgomery, the extent of the duty of appellant depended upon whether or not it had received instructions from the shipper to ship by a specific route. In the absence of such instruction its duty was to deliver to the route usually employed by it, provided such route was a reasonably safe and direct one, but not necessarily the shortest and quickest one.—6 Am. & Eng. Ency. Law (new ed.), pp. 611 and 626. If specific instructions are given by the shipper the initial carrier must follow such instructions if possible, and if it fails is liable as a carrier. 13 Am. & Eng. Ency. Law, 1170-1171. If delivery to designated carrier becomes impossible because of its re-

fusal to accept the shipment, then in cases of ordinary shipments the initial carrier's duty is to hold the shipment for further advices from the shipper, and if it forwards the shipment by another than the designated carrier and loss occurs, the initial carrier is liable for the loss.—13 Am. & Eng. Ency. Law, pp. 1171-72. If, however, the shipment is of a perishable nature and it is apparent that loss would result from delay in forwarding, the forwarder by the exercise of due care in the selection of a connecting carrier relieves itself of further liability, though it forwards the goods without previous notice to the consignor.—13 Am. & Eng. Ency. Law, (new ed.), 1172; 6 Am. & Eng. Ency. Law, (new ed.), 608, 609; *Regan v. Grand Trunk R. R. Co.,* 61 N. H. 579.

BOWMAN & HARSH, *contra,* cited 13 Am. & Eng. Ency. Law, (2d ed.), 1170; *A. G. S. R. R. Co. v. Thomas & Son,* 89 Ala. 300.

McCLELLAN, C. J.—The action is prosecuted by Duncan & Orr against the Louisville & Nashville Railroad Company. The complaint is as follows: "The plaintiffs claim of the defendant one thousand dollars damages for that heretofore, to-wit, on the 5th day of November, 1899, defendant was engaged in the business of a common carrier of freight from Birmingham, Alabama, with connections at various points, several of which connections reached Greenville, Florida; that on said day plaintiffs delivered to defendant at said Birmingham a large lot of horses and mules, to-wit, twenty-six head, to be carried to said Greenville, Florida; that defendant accepted said stock, and it became and was the duty of defendant to carry said stock with reasonable speed to said Greenville, or with reasonable speed to deliver said stock to the one of its connections which could carry said stock with all reasonable speed to said Greenville, but, notwithstanding said duty, defendant delivered said stock to that one of its said connections which had a long and circuitous route to said Greenville, Florida, instead of that one of its said connections which had a shorter and more direct route to

said Greeneville, or instead of carrying said stock itself
to said Greenville, and by reason of said delivery as
aforesaid, said stock did not reach said Greenville for
a long time, to-wit, for three days longer than it should
have taken for them to have been delivered at Green-
ville, and as a proximate consequence thereof, said stock
were subjected to a great deal of jolting and jostling,
and were greatly bruised and otherwise injured, and
said stock were kept closely crowded together in said
car, and said stock or a part thereof were made sick,
and suffered a long time for lack of food and water, and
plaintiffs had to pay a large amount for feed bills, and
the said stock were rendered greatly less valuable to
plaintiffs; all to plaintiff's damages, one thousand dol-
lars, wherefore they sue." We have had some difficulty
in making out precisely what this complaint means,
but, resolving its involvements against the pleader, we
have come to the conclusion that it charges alternatively
that it was either defendant's duty itself and upon its
own lines to transport the stock from Birmingham, Ala.,
to Greenville, Fla., or to deliver it at some unidentified
point—whether at Birmingham, or Montgomery, or
what not, is not stated—on its own line to some connect-
ing carrier having a direct route of transportation from
such point to the Florida town, and that the loss result-
ed either from defendant's failure to perform the carriage
itself or from its failure to forward the consignment by
a carrier having such direct route by its connections or
otherwise from the point of connection to the destination
of the shipment. So construed we are of opinion that
the complaint does not state any cause of action. Its al-
ternative averments of the existence of one, or, if not
that one, then the other, and *vice versa* of two entirely
distinct and different causes of action against the de-
fendant in distinct and different capacities, is not the
affirmative averment of either of the causes of action re-
ferred to; and it cannot be said to aver any cause of
action whatever.—*Southern Railway Co. v. Bunt*, 131
Ala. 591.; *Central of Georgia Railway Co. v. Freeman*,
134 Ala. 354; 32 So. Rep. 778; *Tinney v. Central of*

*Georgia R'y. Co.,* 129 Ala. 523; *Southern Railway Co. v. Shelton,* 136 Ala. 191. No cause of action being averred, the judgment must be reversed.—Code, § 3333.

On the state of facts existing with reference to this consignment after the car had reached Montgomery and the Plant System had refused to accept it for carriage to Greenville, if that company did so refuse—and on this issue it seems to us that the evidence was all with the defendant—it was defendant's duty to give notice of that fact to the consignors to the end that they might give further directions as to routing the consignment, unless the property was of such perishable nature as that the time necessary to give such notice and to receive such instructions would have caused a delay in forwarding calculated to injure or destroy it. We do not find on the evidence in this record that any such delay would have been entailed by taking the time necessary to these ends, or, at least, we may say that with this issue properly in the case, it would be open to the jury to find that the defendant was remiss of its duty in this connection. Live stock is, of course, perishable in a general sense; but we apprehend that horses and mules released from the car and in a pen in Montgomery, as these were, were in no danger of perishing while the defendant was communicating with the consignors at Birmingham and receiving their reply.

It seems clear to us also that parol evidence as to the consignors having given direction for the consignment to go from Montgomery by the Plant System did not tend to vary or contradict the stipulations of the bill of lading; and that the evidence received on this subject, if believed by the jury, established the fact that the consignors directed the transportation to be over the Plant System.

Other questions aside, it was the duty of the defendant as the forwarding agent of plaintiffs from Montgomery —the Plant System having declined the consignment— to exercise the same care in selecting a carrier or a succession of carriers from Montgomery to Greenville as the owner, being a man of ordinary care and prudence, would have exercised had he been present, and as fully acquainted with all the lines and connections as the de-

[Mohr *et al.* v. Griffin.]

fendant was. And it was a question for the jury whether such a man would have delivered this carload of live stock to the Georgia & Alabama Company, whose manifest interest it was to carry it over their whole line to Savannah and send it thence to Greenville, this route being very long and very circuitous, without directing that company to deliver it to a connecting line at Cordele, Georgia, whereby the distance and time from Montgomery to Greenville would have been reduced about one-half. If the jury should find that a man of ordinary prudence and care would have directed the carriage by the Cordele connection, they should further conclude that defendant was negligent in delivering the car to the Georgia & Alabama road without such direction.

We deem it unnecessary to refer to the rulings of the trial court in detail, since the judgment must be reversed on the insufficiency of the complaint, and what we have said will serve to indicate our views for the purpose of another trial, should there be one.

Reversed and remanded.