## ANTONIO FRANCESCHI Y FRANCESCHI, Plff.

*v.*

## WALTER McK. JONES, Dft.

---

Ponce, Equity, No. 295.

CONSENT DECREE AS RES JUDICATA, ETC.

Privity between Parties.

    1. A court is not bound, at the instance of a plaintiff, by a former decision rendered in a suit between two other distinct parties in favor of the plaintiff, although the plaintiff in the second suit alleges that his position is exactly the same as that of the plaintiff in the

Franceschi y Franceschi v. Jones.

first suit; but he must plead and prove his case independently of the former suit.

Stale Claims—Statute of Limitations.

2. Equity does not enforce stale claims, and will in general enforce the basic principle of the Statute of Limitations, and the period of an action to redeem from a mortgage is twenty years.

Estoppel.

3. Where a person has acted or refrained from acting in a particular matter upon the request of another, the latter is estopped to take any position inconsistent with his request, to the prejudice of the party so induced to act.

Evidence—Translation of Documents.

4. Although, where it is merely a matter of form, the court will often permit, with or without agreement between the parties, the filing of papers out of order, and perhaps even after the close of the evidence, it will not receive in evidence papers which have not been translated into English, where the party offering them has had ample opportunity to have had translations made.

Construction of Contracts—Presumptions.

5. The general presumption is that an instrument is what it purports to be, and a deed, appearing on its face to be a lease with an option to purchase, can operate as a mortgage, contrary to its terms, only where the evidence is clear, unequivocal, and convincing.

Parties—Consent Decree.

6. Where one files a petition in intervention in a pending suit, whether or not the petition is acted upon by the other parties, he becomes a party to the suit; and a decree entered by consent of all parties, when acted upon, becomes as binding as if obtained in any other manner.

Consent Decree.

7. If a consent decree is acted upon, it binds the parties, but does not necessarily bind the court in another proceeding, as it is not a judicial determination by the court of any litigated rights, and is not much more than a stipulation between the parties.

Consent Decree—Latent Ambiguity.

8. There seems to be no reason why the rule as to a latent ambiguity should not apply to a consent decree as well as to any other instrument, and parol and extrinsic evidence is admissible to explain it.

Opinion filed March 2, 1916.

## Statement of Facts.

The litigation in this case concerns the title to a coffee plantation known as Limon in the municipality of Juana Diaz, Porto Rico, and has come up in this court a number of times. The facts as shown by the testimony prove to the satisfaction of the court that on April 8, 1878, Felix Olivieri sold the property, containing 268 cuerdas, to Alvarado Hermanos in payment of a certain debt, and that the dominio title was duly registered in the grantees. May 16, 1882, Alvarado Hermanos sold the property back to Olivieri for 20,000 pesos, and, to secure the purchase money, placed a mortgage on Limon, and also on an adjoining finca of 176 cuerdas owned by him. Olivieri, however, did not pay the mortgage, and on July 31, 1886, the sale to him was rescinded, and the two properties were sold to Alvarado Hermanos. The deed of 1886 was a warranty deed of ownership in fee simple without reservation or limitation. It was duly registered and the two properties were thence on known as one, called Limon, containing 444 cuerdas.

On this same date, July 31, 1886, Alvarado Hermanos leased Limon to Olivieri for 2,400 pesos per annum, with the right to "recuperar" the property for 20,000 pesos, besides the accrued rental. This was in the nature of the transaction known as pacto de retro, good until July 31, 1892. By transfers among the Alvarados the property passed to Vicente, and upon his death to his wife, Juliana Colon de Alvarado, and their two children. The title was registered April 7, 1890. The widow and children in their turn leased the property July 1, 1892, to Olivieri, for a term expiring January 31, 1897, at a rental of 2,400 pesos, with an agreement to sell for 20,000 pesos more.

Franceschi y Franceschi v. Jones.

This purchase, however, also was not carried out, and on October 24, 1900, another lease was made between the same parties, expiring July 31, 1908, for $1,872, with also an agreement to sell for $15,600.

In 1901 Felix Olivieri died, leaving a number of children, and the matter got into this court, in the case of Olivieri v. Olivieri, 5 Porto Rico Fed. Rep. 607, No. 196 Equity, Ponce. This was to settle the claims of the Olivieris to certain lands as between themselves, including, among others, the hacienda Limon, which the bill did not state to be registered in the name of the Alvarados, none of whom are made parties. In this suit an amendment was filed August 7, 1905, bringing Juliana Colon de Alvarado in as claiming an interest in Limon, and she filed an answer setting up a claim by herself and two children. December 3, 1906, this amendment was withdrawn and the complaint dismissed as against Juliana. Subsequently, on June 5, 1907, Juliana and her two children filed a bill of intervention in this case,, asking to be decreed hacienda Limon, and for an accounting. No answer or other pleading seems to have been filed by any party to this bill of intervention, but two days later Judge Rodey called the parties together for conference in the judge's room at Ponce. It seems that there was a chance to sell the property to an American named Welch, and it was in connection with this that an order was entered by Judge Rodey on that day. Whether the circumstances under which this order was made are admissible is one of the points in the present case. Nothing further was done under this order, however, and on August 12, 1909, there was another conference, and a decree providing for a different settlement, whereby the Olivieris would sell the Alvarados a different tract. The

circumstances as to this order are also in question. The transfer called for by it was never made.

About this time the Alvarado succession dropped out of the title altogether, for, on May 29, 1910, they sold Limon to defendant Jones by a notarial deed, and made him a supplemental deed March 2, 1911. The second deed omits certain recitals of the earlier conveyance. In July, 1910, in the Olivieri Case No. 196 Equity, Jones filed a petition asking that Limon be turned over to him as owner under his purchase, and on the 14th of the same month Franceschi filed an answer in opposition. Judge Jenkins, the incumbent, on July 21 directed the receiver of the court, who had possession of the property under previous orders, to deliver possession to Jones, speaking of him as the owner. Subsequently Franceschi applied to have this order set aside, but Judge Charlton, the incumbent at the time, denied it.

Not only did Jones thus obtain possession, but on August 6, 1910, in the same case, he filed a petition for back rents from the Olivieri heirs, amounting to about $12,000. It does not seem that any action was taken on this petition. Franceschi and Jones made an agreement October 29, 1912, found in a further agreement of February 27, 1913, between Jones and Tous Soto. There is testimony tending to show that Tous Soto was the attorney of Franceschi, and in this agreement agreed that Jones was the owner in fee simple of Limon, and in consideration of his forgoing the collection of the back rents, Franceschi would sell certain property to Jones and Marvin at a fixed price. Jones has not prosecuted any claim for the back rents, and the question comes up whether or not Franceschi is estopped through this agreement from now setting up

that the title of Jones is not in fee simple, as agreed at that time. Parallel with the equity case No. 196 was another brought by Pettingill & Leake against Jones, No. 260, in this court. This suit was filed June 5, 1905 (5 Porto Rico Fed. Rep. 607), and reached decree on March 9, 1914, whereby the court held that the title of Jones as against Pettingill, the surviving plaintiff, was a mortgage, and permitted Pettingill to redeem. This redemption was carried out for his one-eighteenth interest. Complainants herein seek to take advantage of this decision as a practical adjudication of their own right to eight ninths of the same property. They were not parties to suit No. 260. They sought to make themselves parties thereto, first by a petition of intervention after the final decree; but this was denied, ante, 183. Thereupon Franceschi, on July 31, 1915, filed an original bill in this case, No. 295; and, after various proceedings, this was answered by Jones on September 24, 1915. An amended bill for redemption was filed December 17, 1915, and answered December 23, 1915. The bill seeks to pay off an encumbrance upon property alleged by the plaintiff to be his own. The answer sets up different defenses, amongst others being prescription, estoppel, bona fide purchase for value, and also on the merits both of the plaintiff's alleged title and that of the defendant. The case was tried on testimony taken at Ponce on January 20, 1916, and now comes on for decision.

*Messrs. José A. Poventud* and *R. V. Perez Marchand* solicitors for plaintiff.

*Mr. Francis E. Neagle* solicitor for defendant.

HAMILTON, Judge, delivered the following opinion:

1. The Olivieri estate has been before this court in different forms for many years. It is not always possible to reconcile the views taken by the different judges, or perhaps even by the same judge at different times. We are now cited to the decision of the present incumbent in that branch of the case known as Pettingill v. Jones, ante, 183, No. 260 Equity, as establishing that the title held by Jones is that of a mortgagee, and therefore subject to redemption. A kind of judicial estoppel is invoked, wherein it is sought to have the court make, on that account, a similar decision in this case, No. 295 Equity.

This, however, arises from a mistaken conception of the duties and powers of a court. There are certain proceedings called *in rem*, whereby a title or status is established in one or the other party as against the world, and there are many proceedings *quasi in rem* which have this result in part. The suit No. 260, however, was not of this character. It was a suit between one Pettingill and the present defendant Jones, whereby as between Pettingill and Jones it was shown by evidence satisfactory to the court that Jones held his interest subject to a mortgage claim on the part of Pettingill, and Pettingill was permitted to redeem or make other settlement satisfactory to the parties on the basis of a redemption. It is evident, therefore, that the decree in that case established nothing except as between Pettingill and Jones. A suit of Franceschi against Jones could not be affected one way or the other. A party is entitled to his day in court, and can set up any evidence which comes to hand bearing upon the issue in the case. While, except in the case of a new trial, there can be no re-

Franceschi y Franceschi v. Jones.

opening of an issue which has once been decided, even the same question may be determined differently between different parties, because it depends upon the pleadings and evidence in the respective suits. A may win his suit against B upon his pleadings and evidence, while a suit of C against B, although apparently arising out of the same cause of action, may have no merit, because the pleadings may show that C is estopped or barred from proceeding, or because in the second suit B may have learned by experience and be able to produce evidence which he did not have in the suit against A. The result might, therefore, be very different in the two cases.

The argument of the complainant seems to be that a court is bound to come to the same conclusion in the two suits. This, however, is a mistake. There can be no pride of opinion on the part of the court. The duty of a court is to decide each case upon the pleadings and evidence in that case; and if this brings about different results, the court must nevertheless decide as is right in the respective cases.

"A decree is not *res judicata* as between other parties than those who have been involved in the preceding litigation, unless privity in the way of succession to legal burdens is shown." Cheatham Electric Switching Device Co. v. Brooklyn Rapid Transit Co. 227 Fed. 613; Nikola Tesla Co. v. Marconi Wireless Teleg. Co. 227 Fed. 903.

2. Equity does not enforce stale claims, and will, in general, enforce the basic principle of the Statute of Limitations. 16 Cyc. 150, 154. The defendant's grantors acquired this property July 31, 1886. It is strenuously maintained by the plaintiff, however, that the plaintiff or his predecessors have been in continuous possession ever since that time, and even earlier.

This is not altogether clear as to several years, and during all the time plaintiff's predecessors were in possession, it was under a lease from defendant's predecessors. This, therefore, was not the possession of the plaintiff, but of the defendant.

The prescription governing a case of this sort is hardly to be found in §§ 1858 to 1861 of the Civil Code. This is not a suit for the recovery of land, and in the ordinary sense of a debt is not a suit to recover a debt. The bill is entitled one to redeem, and the only redemption possible under the facts of this case is from a mortgage, or something in the nature of a mortgage. The limitation for such a suit is found in Civil Code, § 1865, which is as follows: "A mortgage action prescribes after twenty years, and those which are personal and for which no special term of prescription is fixed, after fifteen years."

Article 124 of the Mortgage Law is to the same effect. This prescription is twenty years. The last title deed between the Alvarados and the Olivieris before litigation began was October 24, 1900, not to mention evidence of court which may or may not have the same effect. The suit in this case was begun in 1915, and the period of twenty years had not then elapsed. Where the law gives a distinct limitation, a court of equity will ordinarily disregard it and hold a claim barred for laches. It is true that the prescription mentioned is against the enforcement of a mortgage, and not against redemption from a mortgage. The rule, however, must be held to work both ways. If the Alvarados have twenty years within which to enforce their mortgage, the Olivieris must be held to have twenty years within which to redeem from the mortgage, certainly so in a

court of equity. It follows, therefore, that the defense of limitation and laches is not made out.

3. The defendant alleges that the plaintiff is estopped from bringing this suit by an agreement between these parties dated October 29, 1912. Before that time defendant Jones had purchased the property from the Alvarados and had been given possession thereof by order of this court per Judge Jenkins, against the strenuous opposition of the plaintiff herein. Franceschi had in 1912 purchased the rights of the Olivieri heirs, who had accepted the estate without benefit of inventory, and therefore the property in their hands, and in the hands of their vendee, was subject to the payment of the debts of Felix Olivieri, deceased. Jones had undertaken proceedings to collect about $12,000 back rent on the property he had purchased. One Tous Soto agreed with Jones that Jones should not press the rent claim, and on the other hand Franceschi sold certain property to him and his partner Marvin that was desired by them. This agreement, amongst other things, contains the following provisions:

"Mr. Alexander B. Marvin and Mr. Walter McK. Jones of one part and Don Franceschi y Franceschi of the other have covenanted as follows:

"The first-named party shall desist of any and all claim against the heirs of Don Felix Olivieri y Cervoni, and particularly with reference to the claim which they have pending in the district court of the United States for Porto Rico, over the 'Limon' property, as assignees of the rights of the heirs of Don Pascacio Alvarado, for rentals of said property due under the lease and promise of sale between said heirs of Alva-

VIII. Porto Rico—31.

rado as owners of 'Limon,' and Don Felix Olivieri y Cervoni considered themselves paid of said rents."

This seems to amount to an agreement between Franceschi and Jones whereby, amongst other things, Jones forbore certain rents to which he had a right as owner, and Franceschi admitted the ownership by said Jones. Jones is shown to have consistently acted upon this agreement, and to have given up the rents. It follows that Franceschi on his side must be held to recognize the ownership of Jones, and therefore cannot now turn around and sue Jones on the theory that Jones is not the absolute owner, but a mortgagee.

One who by his renunciation or disclaimer of a right or title has induced another to believe and act thereon is estopped afterward to assert such right or title. Hoots v. Williams, 116 Ala. 372, 22 So. 497; Grace v. McKissack, 49 Ala. 163; Miller v. Jones, 26 Ala. 247. Where a person has, with knowledge of the facts, acted or conducted himself in a particular manner or asserted a particular claim, title, or right, he cannot afterward assume a position inconsistent therewith, to the prejudice of another. Durr v. Wilson, 116 Ala. 125, 22 So. 536; Cooper v. Berney Nat. Bank, 99 Ala. 119, 11 So. 760; Sullivan v. McLaughlin, 99 Ala. 60, 11 So. 447; Lehman v. Clark, 85 Ala. 109, 4 So. 651. Where a person has acted or refrained from acting in a particular matter upon the request or advice of another, the latter is estopped to take any position inconsistent with his own request or advice to the prejudice of the party so induced to act. Bigelow, Estoppel, 5th ed. 638; Swift v. Stovall, 105 Ala. 571, 17 So. 186. Where a person with actual or constructive knowledge of the facts induces another by his words or conduct to believe that he acquiesces in or

Franceschi y Franceschi, v. Jones.

ratifies a transaction, or that he will offer no opposition thereto, and that other, in reliance on such belief, alters his position, such person is estopped from repudiating the transaction to the other's prejudice. Harris v. American Bldg. & L. Asso. 122 Ala. 545, 25 So. 200; Erie R. Co. v. Delaware, L. & W. R. Co. 21 N. J. Eq. 283; Higbee v. Camden & A. R. Co. 20 N. J. Eq. 435.

It is true that Franceschi claims Tous Soto had no right to represent him in this agreement, and the evidence seems to show a disregard by the agent of his verbal promises in the matter. It is true that Tous Soto does not appear as an attorney in the suit at bar, but he is shown to have acted previously, and about the time of this agreement, as the attorney of Franceschi, if indeed the evidence does not show that he is the purchaser of Franceschi's rights; and so, in the eye of the law, he was Franceschi himself, to all intents and purposes. The evidence convinces the court that Franceschi, under these circumstances, if more than a nominal plaintiff at all, does not come into court with clean hands. A court of equity will not aid persons who do not so qualify themselves. It follows that the estoppel has been proved to the satisfaction of the court, and the bill of such a party will not be enforced.

4. This would seem to be conclusive of the case, and perhaps it is not necessary to go further. For completeness, however, it would be well to pass on several other points which have been raised.

In any case the plaintiff must prove his case,—in this instance that he owns eight ninths of the property, and has a right to redeem to that extent. The defendant contends that the plaintiff has not proved his title; and bases this mainly

upon the fact that a number of deeds offered by the plaintiff were refused admission on the trial because they were in Spanish, not accompanied by a translation, according to rule 45 of this court. The plaintiff, on the other hand, asks the court to take back the ruling, and consider the deeds in evidence. The court is satisfied that it committed no error, and that for reasons stated at the time. Where it is a formal matter the parties often agree, and the court, in the absence of agreement, often permits papers to be filed out of order, and perhaps even after the close of the evidence. The court did not think that practice proper on the trial of this case. It would seem that the plaintiff had ample opportunity before the trial to prepare the proper translations, and had failed to do so. It was not a case of supplying formal papers, but, as the law requires the proceedings of this court to be in English, it was the right of the opposite party to have the evidence before him in English, so as to be able to make proper objections before the papers were admitted. This would be impossible if the defect was supplied afterwards. It is quite conceivable that the evidence of the opposing party will be affected by the evidence in question, and permitting it to be put in later subject to objection would practically be continuing the case to another day for trial. The parties having announced ready, the plaintiff, necessarily knowing the state of his documentary case, must be held to his admission of readiness. There is no other way of orderly conducting a trial.

In the case at bar, however, the court is of the opinion that the pleadings on behalf of the defendant sufficiently admit the plaintiff's title, so that the execution of the papers in question

Franceschi y Franceschi v. Jones.

is not material. The plaintiff's title was, for the purposes of this case, sufficiently before the court.

5. While the plaintiff must therefore be considered to have proved that he holds the Olivieri title claimed, this does not at all settle what that title was. His contention is that Olivieri was to all intents and purposes the owner of Limon from the beginning, subject to a mortgage back to the Alvarados. The first document throwing any light upon the subject was an unconditional sale of the land by Olivieri to Alvarado in payment of a debt. In 1882 the Alvarados sold to Olivieri, the consideration to be paid in instalments, and a mortgage was given. This was not paid, and in 1886 the parties rescinded the sale of 1882 as to the original Limon, and that and 176 cuerdas more were deeded to Alvarado. Then begins the procedure by which the Alvarados leased the property to Olivieri with a right of purchase, in the first instance for 20,000 pesos.

The general principle is that a deed is to be construed as a conveyance of land, and can operate as a mortgage, contrary to its terms, only where the evidence is clear, unequivocal, and convincing. The general presumption is that an instrument is what it purports to be. In the case at bar there is no evidence, as there usually is with mortgages, of a loan and payment, or agreement for the payment, of interest. The transaction seems to be more nearly akin to a conditional sale, or, as it is known to the Spanish law, as a pacto de retro, which becomes invalid *ipso facto* if the time for repurchase passes without action. Rivera v. Puente, 3 Porto Rico Fed. Rep. 293; Grau y v. Batle Valdecilla, 5 Porto Rico Fed. Rep. 338. In Monagas v. Albertucci, 17 P. R. R. 684, the question is discussed at some length by Mr. Justice MacLeary, and the distinction is not

only clearly drawn, but it is declared that the American equity doctrine does not differ materially from the principles of the Civil Code. It is allowable to show by evidence that an instrument on its face absolute was intended as a mortgage; but no such evidence was introduced in the case at bar. There appears to be no reason why the instrument should not be construed as a conditional sale, and not as a mortgage.

The form of the transaction was somewhat changed by the agreement of July 1, 1892, inasmuch as the pacto de retro was not continued. Instead of that, an absolute right to purchase was conferred on Olivieri, which expires January 31, 1897, without action on his part. From that date to October 24, 1900, there is no evidence that Olivieri had a paper title of any kind to the property. On the latter date the Alvarados made a lease to Olivieri, giving the option to purchase at a higher figure than before. This is the instrument claimed by the plaintiff to have been intended as a mortgage, but it would seem to follow the principles above discussed. There is nothing to show a debt or payment of interest, and no outside evidence to show that it was anything except what it purported to be upon its face,—a lease with the option to purchase.

6. The most difficult question, however, in the case, arises under the construction placed by this court June 7, 1907, upon this contract of 1900. Judge Rodey of this court got the parties together and entered up a decree by consent, which, upon its face, seems to treat the contract as a mortgage, as held in this court in case No. 260. The plaintiff contends that this order was *res judicata,* and settled for all time, that, no matter what difference of opinion there might have been previously as to the title, it was henceforth not absolute in the

Alvarados, but subject to the mortgage held by the Olivieris. On the other hand, the defendant contends that, even if this be true, it was not binding upon the Alvarados, because they were not strictly parties, in that their petition in the case had never been answered. Russell v. Place, 94 U. S. 606, 24 L. ed. 214; Denny v. Bennett, 128 U. S. 489, 32 L. ed. 491, 9 Sup. Ct. Rep. 134. The only result of there not being an answer, however, would be that they could have taken a decree *pro confesso*. Having come into the case voluntarily by a petition, and being recognized by the court on June 7, 1907, as in the case, they cannot now assert that they were not. True, the order of June 7, 1907, was by consent. Consent, however, makes a decree, when acted upon, as binding upon the parties as it would be if obtained in any other form. So far as the pleading of the Alvarados is concerned, and so far as the form of the decree is concerned, it is binding.

7. A controlling question, however, is as to whether the decree was acted upon. If it was, it would bind the parties, although it would not necessarily bind the court in another proceeding. A consent decree is not much more than a stipulation between the parties. It is not a judicial determination by the court of any litigated rights. Gay v. Parpart, 106 U. S. 679, 698, 27 L. ed. 256, 263, 1 Sup. Ct. Rep. 456; Texas & P. R. Co. v. Southern P. Co. 137 U. S. 48, 56, 34 L. ed. 614, 617, 11 Sup. Ct. Rep. 10; Nashville, C. & St. L. R. Co. v. United States, 113 U. S. 261, 28 L. ed. 971, 5 Sup. Ct. Rep. 460.

Particularly is this so where the court is called upon to enforce such a decree by subsequent proceedings. In such case, if litigated, the court is called upon to determine the plaintiff's right, and where a party returns to a court of equity to obtain

its aid in executing a former decree, it is at the risk of opening up such decree as respects the relief to be granted on the new bill. Lawrence Mfg. Co. v. Janesville Cotton Mills, 138 U. S. 552, 34 L. ed. 1005, 11 Sup. Ct. Rep. 402. The reason for this is that the prior decree was the consequence of the consent of the parties and not of the judgment of the court, and the court can therefore decline to treat it as *res judicata.* This case is accepted authority upon the subject.

It seems, also, that the order of June 7, 1907, does not stand alone. The same judge who made that order made a later one, August 12, 1909, under a stipulation of the parties under somewhat similar circumstances to that of 1907. That is to say, the court gathered the parties together with a view of arriving at some settlement, and in this order the Alvarado succession was spoken of as holding a "claim, deed, mortgage, or debt." If the order of June 7, 1907, was *res judicata,* there could be no propriety in speaking of the claim subsequently as anything except a mortgagee's interest. The subsequent decree, therefore, shows that that of 1907 was not regarded by the parties, or by the court, as settling the nature of the Alvarado claim.

8. It would seem, therefore, that there were circumstances connected with the order of June 7, 1907, upon which light could be thrown by the facts under which it was made. It is very true that parol evidence cannot be used to vary a written instrument, and in particular a court decree. Equity going more to the root of the matter than courts of law, sometimes does not follow legal rules of evidence. "It follows that, however closely a court may be disposed to adhere to the salu-

Franceschi y Franceschi v. Jones.

tary rule of law,—that parol evidence is not admissible to vary, contradict, or control a written instrument,—it must necessarily exercise much more liberality in admitting evidence in order to reach the equity of the case than would be allowed by a court of law. It is vain to say that a court of equity will refuse its aid to compel a party to do what a conscientious man ought not to ask him to do under all the circumstances of the case; and yet, by a strict application of a principle of law, forbid his proving the circumstances which establish the hardship and inequity of the case." Stoutenburgh v. Tompkins, 9 N. J. Eq. 332, 336.

Parol evidence is admissible, not to vary or contradict a written instrument, but to explain how it was to be carried out. Louisville & N. R. Co. v. Duncan, 137 Ala. 446, 34 So. 988. It is admissible in equity to show the meaning of an instrument. American Colonial Bank v. Cabrera, 3 Porto Rico Fed. Rep. 14; Doe ex dem. Hughes v. Wilkinson, 35 Ala. 453; Boykin v. Bank of Mobile, 72 Ala. 262, 47 Am. Rep. 408. The inducing cause leading up to the execution of a written instrument, and in this case leading up to the consent decree, may be shown. Citizens' Bank v. Brigham, 61 Kan. 727, 60 Pac. 754; Holland v. Kimbrough, 52 Ala. 249.

There seems to be no reason why the rule as to latent ambiguity should not apply to a consent decree, as well as to any other instrument indicating the agreement of parties. Parol and extrinsic evidence is admissible to explain a latent ambiguity. Doe ex dem. Hughes v. Wilkinson, 35 Ala. 453; Delaware Indians v. Cherokee Nation, 193 U. S. 127, 48 L. ed. 646, 24 Sup. Ct. Rep. 342. It would seem to follow,

Franceschi y Franceschi v. Jones.

therefore, that the evidence which was offered showing the circumstances under which was framed the consent decree of June 7, 1907, was admissible, and the provisional rulings of the court in this regard were therefore proper, and are to be considered final. When so admitted, the facts seem to be that the decree of June 7, 1907, was not intended as a final adjudication of title, but as a provisional arrangement, under which the parties and the court hoped that a sale would be made whereby everyone would receive what was due to him. It is shown by the witnesses who were present, and who could have been contradicted by the others who were present, some of them attorneys or representatives of the present plaintiff, that it was intended the arrangement should be carried out within six months. In point of fact, the judge in this decree provided that the parties could disaffirm within six months. The whole plan having fallen through, however, this was not formally done, but the same result was attained by letting the decree lapse when the proposed sale did not materialize.

As thus explained, the decree of June 7, 1907, ceases to be an important element in the case at bar.

Other questions arose in the case which it is not deemed material to pass upon. Enough has been settled to produce the result that the plaintiff is not entitled to recover. It follows, therefore, that his bill is dismissed upon the merits.

It is so ordered.